**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Thaddeus Taylor, *pro se*** | : | |
| | : | |
| **vs.** | : | **C.A. No.: 05-407S** |
| | : | |
| **Correctional Officer Lt. Doyle, Rhode Island Department of Corrections, et al** | : | |

**DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTIVE RELIEF PROHIBITING DEFENDANT'S FROM INTERFERING IN WORK PRODUCTIVITY - HARASSMENT**

Now come Defendants, Correctional Officer Lt. Doyle, and the Rhode Island Department of Corrections, et al, by and through counsel, and hereby object to Plaintiff's Motion for Temporary Injunctive Relief Prohibiting Defendants from Interfering in Work Productivity – Harassment. For the reasons set forth in the accompanying memorandum, Defendants submit Plaintiff's motion should be denied.

Defendants, by their attorney,

Kathleen Kelly

Kathleen M. Kelly #5501
RI Department of Corrections
40 Howard Avenue
Cranston, RI 02920
(401) 462-2622
(401) 462-2583 *fax*

**Certification**

I hereby certify that a true copy of the within document was mailed, postage-prepaid, to Plaintiff, Thaddeus Taylor, at P.O. Box 8200, Cranston, RI 02920, on this 30th day of November, 2005.

Kathleen Kelly

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Thaddeus Taylor, *pro se*** | : | |
| | : | |
| **vs.** | : | **C.A. No.: 05-407S** |
| | : | |
| **Correctional Officer Lt. Doyle,** | : | |
| **Rhode Island Department** | : | |
| **Of Corrections, et al** | : | |

**DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTIVE RELIEF PROHIBITING DEFENDANT'S FROM INTERFERING IN WORK PRODUCTIVITY - HARASSMENT**

Now come Defendants, Correctional Officer Lt. Doyle, and the Rhode Island Department of Corrections, et al, and hereby responds to Plaintiff's request for temporary injunctive relief. For the reasons set forth below, Defendants submits the Plaintiff's Motion should be denied.

**Introduction:**

Plaintiff Thaddeus Taylor [hereafter referred to as "Plaintiff" or "Taylor"] is an ex-Connecticut correctional officer, currently incarcerated at the High Security Center of the ACI. Plaintiff has been housed in Rhode Island since March 2005, when he was transferred here from the Connecticut Department of Corrections. Since his incarceration in Rhode Island, Plaintiff has filed a steady stream of lawsuits, habeas corpus petitions, and in excess of forty-five motions, objections and replies alleging a myriad number of constitutional violations and requesting various forms of injunctive

relief[1]. He currently has three appeals pending in the First Circuit Court of Appeals and two Habeas Corpus petitions pending in the Rhode Island Federal District Court C.A. #05-406S and 05-407S).[2] Essentially, Plaintiff is unhappy with his transfer to Rhode Island and wants to be returned to Connecticut.

During his tenure as an inmate in the Rhode Island correctional system, Plaintiff has been disciplined on a number of occasions for failure to abide by the rules and regulations of the prison system. He has received a number of disciplines for such infractions as exceeding the limit for food, batteries and other materials allowed in his cell, exceeding the limit for the amount of legal materials he is allowed to keep in his cell, displaying disrespect and hostility towards correctional officers, and failure to respond to directions and orders in a timely manner.

Contrary to Plaintiff's assertions that he is being treated unfairly by the Rhode Island Department of Corrections, staff at all levels has gone to unprecedented lengths to accommodate this inmate. Due to his numerous pending lawsuits, Plaintiff is allowed one cubic foot of legal materials in his cell each day. Any more than this is a fire hazard. He is given the opportunity to rotate those materials. He is given access to all 38 (at last count) boxes of his legal materials every two weeks. As a courtesy to the Plaintiff, prior to court dates he is allowed even greater access to his case files to help him prepare for his legal matters. In fact, Plaintiff had a court date in Connecticut on November 23, 2005. To allow him time to prepare for that court appearance, Lt.

[1] On September 20, 2005, Judge Ernest Torres dismissed Case #05-118, thereby resolving the majority of these matters.

[2] Plaintiff also has a number of lawsuits pending in Connecticut; however, the Department of Corrections is unsure of the status or number of those cases.

William Galligan placed two bags and a box of legal materials in a vacant cell and offered Plaintiff access to those materials. Plaintiff refused this offer. He is also allowed double the usual hours allotted an inmate in the law library, which translates into approximately 12 hours of law library time, split between six sessions per week.

**Current Motion before the Court:**

On November 17, 2005, Plaintiff mailed this motion to the Rhode Island Federal District Court alleging the Department of Corrections is retaliating against him in response to his pending litigation. He alleges the department conducted a "shakedown" of his cell, wrote him up for a "bogus" discipline and has denied him access to his legal files and the law library.

Defendants adamantly deny that Plaintiff is being retaliated against in any manner, that he is being denied access to his legal materials or the library, or that he is being punished based on false disciplinary reports. All the complaints presented in this motion have been previously addressed by the court through prior motions for injunctive relief. In each instance the motion has been denied.

In regards to the latest allegations of mistreatment, on November 17, 2005, correctional officers and Special Investigation Unit investigators searched the entire block where Plaintiff is located. Such searches are conducted on a regular basis. All cells within that block were searched, not just Plaintiff's cell. The Plaintiff was not specifically targeted and no "shakedown" of the Plaintiff took place. During the search of Plaintiff's cell, numerous items of contraband were found. Plaintiff was found to have an extreme amount of materials in his cell, including a footlocker filled with food

he had acquired over time from the commissary, an excessive number of batteries and also an excessive amount of legal materials he had accumulated over time. This is not the first time Plaintiff has been found with an excessive amount of food and other items in his cell. The inmate regulations handbook sets forth guidelines for how much food, batteries, and other items an inmate may have in his cell. All inmates are required to abide by these guidelines.

Based on the number of items in his cell he was disciplined for the contraband. As for the excessive amount of legal materials, Lt. Galligan gave Taylor a milk crate and allowed him to cull through the materials and determine which materials he wanted to keep and which would be put back with his 38-plus boxes.

Plaintiff now requests the Court grant an injunction prohibiting the Defendants from disciplining him, harassing him, and denying him access to his legal materials and the law library.

**Standard for Issuance of Injunctive Relief:**

In order for Taylor to prevail on his motion for injunctive relief, he must demonstrate the following four elements: (1) the likelihood of his success on the merits; (2) potential for irreparable injury; (3) the relevant balance of hardships if the restraint does or does not issue; (4) and the effect on the public interest of a grant or denial of the motion. *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 5 (1st Cir. 1991). Failure to demonstrate any one of these four elements prohibits the granting of a preliminary injunction.

**Plaintiff's Due Process Claim:**

Plaintiff requests the court grant an injunction prohibiting the Department of Corrections from disciplining him. Disciplinary hearings and punishment in a prison setting were specifically addressed in *Sandin v. Conner*, wherein a prisoner was given a sentence of 30 day disciplinary segregation. *Sandin v. Conner*, 515 U.S. 472, 475; 115 S.Ct. 2293, 2296 (1995). In *Sandin*, the United States Supreme Court stated, "the Due Process Clause standing alone confers no liberty interest in freedom from state action taken within a sentence imposed." *Id.*at 480. "The State may in certain circumstances create liberty interests that are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical, significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. The Court went on to hold that a 30 day sentence to disciplinary segregation "did not present the type of atypical, significant deprivation in which a State might ....create a liberty interest. *Id.* at 475. Based on the holding in *Sandin*, any disciplinary action taken against Plaintiff not in excess of 30 days segregation does not trigger any Due Process protections.

Further, the hardship placed upon the Department of Corrections in dealing with an inmate who is not subject to disciplinary punishment would be substantial. Such a prohibition would create a serious security risk for staff, the Plaintiff and the inmate population at large. The United States Supreme Court has stated, "maintaining institutional security and preserving internal order and discipline are essential goals that

may require limitation or retraction of [a] retained constitutional right." Bell v. Wolfish, 441 U.S. 520, 546; 99 S.Ct. 1861, 1878 (1979). "Central to all other goals is the institutional consideration of internal security within the correctional facilities themselves." Id. at 547, 1878. "Prison administrators....should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 547, 1878. "Such considerations are peculiarly within the province and professional expertise of corrections officials and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their judgment in such matters." Id at 548, 1879.

On September 20, 2005, Magistrate Judge Hagopian expressed these same concerns when he considered and denied an identical motion. He stated in his Report and Recommendation "the relief plaintiff seeks is contrary to public policy. Plaintiff seeks an injunction that would essentially prevent prison officials from charging [him] with any disciplinary infraction and would require the Court to micro-manage the RI-DOC's disciplinary boards. The Court will not give the Plaintiff a free pass and permit him to misbehave without consequence." (See attached Exhibit A). He further stated "the Prison Litigation Reform Act provides that a federal court 'shall not grant or approve any [form of injunctive relief] unless the court finds that such relief is narrowly drawn, extends no farther than necessary to correct the violation of the Federal Right, and is the least intrusive means necessary to correct the violation of the Federal right'. Here

the injunctive relief the plaintiff seeks is too broad and sweeping. This court cannot issue such an injunction." (See attached Exhibit A).

**Plaintiff's Claim that he is being denied access to his legal materials and the law library.**

This claim has also been previously addressed by both the Rhode Island Federal District Court and the Connecticut courts. In June 16, 2005, Plaintiff filed a motion for injunctive relief asking the Federal Court to grant Plaintiff unfettered access to his legal materials. Defendants objected to this motion and provided the court with the following information: 1) Plaintiff was allowed one cubic foot of legal material in his cell each day; 2) He was allowed to change this cubic foot of material each day, and 3) He was given full access to all his boxes of materials every two weeks. This access is separate and apart from the time he is allowed in the law library.

In June 2005, Connecticut Judge Richard Damiani heard testimony from Lt. William Galligan, of the Department of Corrections, wherein Lt Galligan described the amount of materials the Plaintiff had access to and the manner in which he was given access. Judge Damiani specifically found that the Rhode Island Department of Corrections was providing Plaintiff with adequate access to his legal materials. (See attached Exhibit B). Defendants provided the Federal Court with a copy of the partial transcript of Judge Damiani's ruling.

In September 2005, Magistrate Judge Hagopian denied Plaintiff's motion relating to access to his legal materials. The Magistrate Judge noted in his Reprot and Recommendation that "an inmate has a right to access to the courts, but that a prson

regulation that infringes on an inmate's constitut9onal right is valid if it is reasonably related to legitimate penological interests." (See attached Exhibit C – 2 pages). Magistrate Hagopian further noted "Plaintiff has failed to properly demonstrate a violation of his right to access the Courts. In order to demonstrate a violation of this right, plaintiff must demonstrate actual injury. In other words, [he] must demonstrate that a non-frivolous legal claim has been frustrated or impeded." (See attached Exhibit C – 2 pages).

For all reasons set forth in this memorandum, Defendants respectfully request that Plaintiff's Motion for Protective Order and Injunctive Relief be denied.

Defendants, by their attorney,

Kathleen M. Kelly #5501
RI Department of Corrections
40 Howard Avenue
Cranston, RI 02920
(401) 462-2622
(401) 462-2583 *fax*

**Certification**

I hereby certify that a true copy of the within document was mailed, postage-prepaid, to Plaintiff, Thaddeus Taylor, at P.O. Box 8200, Cranston, RI 02920, on this 30th day of November, 2005.